HARRY E. STEWART v. OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA

No. 7310SC723

(Filed 28 November 1973)

1. Contracts § 27— breach of contract — insufficiency of evidence to establish contract

Plaintiff's evidence was insufficient to establish an employment contract with defendant where it showed that a conference was held

between plaintiff and officers of defendant to discuss the terms of a contract for plaintiff's continued employment as a regional manager for defendant, that certain terms of compensation were offered to plaintiff during the conference without any correlative conditions of employment, duties of plaintiff, or provisions for termination, and that plaintiff rejected the only offer communicated to him.

2. **Quasi Contracts § 1— breach of contract action — failure to submit quasi contract issue**

In an action to recover damages for breach of an employment contract, the trial court did not err in failing to submit an issue of *quantum meruit* to the jury for services rendered defendant in 1968 where plaintiff's evidence showed that defendant paid plaintiff in excess of $80,000 in 1968 for services rendered and plaintiff did not allege or contend that defendant is further indebted to him for services rendered in 1968.

APPEAL by plaintiff from *Hobgood, Judge,* 24 April 1973 Session of Superior Court held in WAKE County.

This is an action for damages for breach of an alleged contract of employment.

Plaintiff's evidence tended to show that plaintiff had been employed by defendant in various capacities, under three separate contracts. The first agreement in question dated 1956 was an "Agent's Agreement" for the sale of life insurance, supplemented in 1957 by an agent's agreement for accident and sickness insurance.

In 1959, a second agreement was reached appointing plaintiff as supervisor of the company in the territory designated "Eastern Carolina Agency." The second agreement was supplemented at that time by a "Net Gain Bonus Agreement," providing incremental bonuses for net gains realized over the previous year. In 1967, the management agreement of 1959 was modified so that plaintiff received a basic salary of $400.00 a month, a net gain bonus of 7% of new premiums received during the year in the Eastern Carolina area, plus a renewal bonus of 2.4% of renewal premiums paid in the previous year, which renewal bonus was paid out over the next twelve calendar months, and was designated as "salary" in addition to plaintiff's basic monthly salary.

In February 1968, discussions commenced between plaintiff and defendant concerning plaintiff's continued association with defendant-corporation. Plaintiff contended that an agree-

ment was reached in a discussion between plaintiff and defendant by and through its President, Chairman of the Board of Directors, and Vice President - Marketing Division, that plaintiff would continue in his present capacity for a term of three years with compensation in 1968 being the same as 1967, but with increased adjustments in all categories for the years 1969 and 1970.

Plaintiff later put into a written memorandum the substance of what he contended the discussion contained. He submitted the memorandum to defendant's Vice President - Marketing, David D. East, in March 1968. In September 1968, a conference was held between plaintiff and the Chairman of the Board, Woodson, and East, representing defendant, to discuss compensation for plaintiff as Regional Manager for 1969. Plaintiff rejected the compensation proposal which varied from the terms of plaintiff's memorandum.

The agreements previously executed between the parties were in the form of continuing contracts terminable by either party upon written notice. The net gain bonus agreement was renewable annually, and also provided for termination of the agreement by either party upon written notice.

On 13 November 1968, plaintiff was informed by East that plaintiff's decision not to continue as Regional Manager in 1969 had been accepted by the defendant-corporation as indicative of resignation, and that the 1969 management agreement would terminate 30 November 1968, with compensation accruing until 31 December 1968, at which time plaintiff's agents' agreements would also terminate.

Defendant moved for a directed verdict at the close of plaintiff's evidence upon grounds that the testimony of plaintiff in regard to the discussion had at the February 1968 meeting of plaintiff with the officers of defendant-corporation, did not constitute a contract because of failure of consideration, vagueness of terms, and lack of mutuality of agreement. Defendant's motion was allowed and plaintiff appealed.

*Sanford, Cannon, Adams & McCullough, by E. D. Gaskins, Jr., and J. Allen Adams, for plaintiff-appellant.*

*Ragsdale & Liggett by George R. Ragsdale, for defendant-appellee.*

BROCK, Chief Judge.

The essential question presented upon appeal is whether plaintiff's evidence shows the formation of a contract requiring defendant to employ plaintiff for the years 1968, 1969 and 1970.

Plaintiff's main contention is that the discussion between the parties which took place in the February 1968 conference resulted in a valid and enforceable contract for employment. Plaintiff testified that the February conference "was for the purpose of arriving at a contract and we discussed a contract."

Plaintiff's recapitulation of the discussions which took place at the February conference is the only evidence in the record of the alleged agreement. Plaintiff testified that Mr. M. F. Browne (Browne), President of Occidental Life (defendant), made the following statements:

"In 1968 we will give you the same contract under which you operated in 1967 . . . . In 1969 we will pay you $38,000 plus $500.00 a month. In 1970 we will pay you $38,000 plus $1,000 a month, and this will be in lieu of your renewal commission . . . . In 1969 and 1970 we will change your net gain bonus from a percentage of premiums to a percentage of commission. How does that sound to you?"

Plaintiff testified that he reduced Browne's terms to writing and submitted them to Mr. David East (East), Vice President - Marketing, requesting East to " . . . type it up and send it to me and I'll sign it." Plaintiff never received a contract in the format of the memorandum submitted to East, but continued to work under the same conditions as the 1967 agreement. Subsequent memoranda in correspondence between the parties proved unsatisfactory and objectionable to plaintiff who continued to work for defendant without a new contract, while submitting items to East which plaintiff desired in his contract when the contract was "finalized." Plaintiff was advised by defendant on 25 November 1968 that all agreements between parties would terminate 30 November 1968, and plaintiff's compensation would accrue until 31 December 1968.

"In order to constitute a valid contract there must be an agreement of the parties upon the essential terms of the contract, definite within themselves or capable of being made definite." 2 Strong, N. C. Index 2d, Contracts, § 1, p. 292.

"Accordingly, in order to constitute a valid contract there must be an offer and an acceptance in the exact terms and the same sense, and the acceptance must be communicated to the offeror."

"An offer must be definite and complete, and a mere proposal intended to open negotiations which contains no definite terms but refers to contingencies to be worked out cannot constitute the basis of a contract, even though accepted." 2 Strong, N. C. Index 2d, Contracts, § 2, p. 294.

[1]  Plaintiff, at best, has presented us with details of a conference convened at his request to discuss the terms of an employment contract for continued association with the defendant. We are given terms of compensation allegedly proffered to plaintiff during the course of the discussion, without any correlative conditions of employment, duties of the plaintiff, or provisions for termination. The only offer which plaintiff has testified was communicated to him, was unacceptable to him, and immediately rejected.

In the absence of an agreement reflecting a meeting of the minds based upon a sufficient consideration, with an offer and acceptance or mutuality of obligations or promises, we can find no contractual agreement based upon plaintiff's recapitulation of the discussion which took place in the February 1968 conference. Plaintiff, therefore, has shown no right to recover damages under a breach of contract theory. All other contentions by plaintiff, based upon an existing contract, are likewise without merit.

[2]  Plaintiff has also asserted that the case should have gone to the jury on the issue of *quantum meruit,* even if plaintiff failed to prove an express contract.

We agree with plaintiff's contention that under the law of quasi contracts, when one party renders services to another without an express contract for payment for such services, the law implies a promise to pay fair compensation, and failure to establish an express contract will not preclude recovery upon the implied promise. *See* 6 Strong, N. C. Index 2d, Quasi Contracts, § 1. However, we do not agree with plaintiff that he did not receive fair compensation for his services rendered in 1968.

Plaintiff testified that his W-2 form for the year 1968 reflected gross payment to plaintiff by defendant in the amount

of $80,676.34 for services rendered. Plaintiff nowhere alleges or contends that defendant is further indebted to him for services rendered for the year 1968.

In our opinion the trial court properly directed a verdict for defendant, and the judgment should be

Affirmed.

Judges HEDRICK and BALEY concur.