**ANGEL MEDICAL CENTER, INC., Plaintiff,**

v.

**George T. ABERNATHY, Defendant.**

**No. 2:98CV257–C.**

United States District Court, W.D. North Carolina, Bryson City Division.

March 10, 2000.

---

Chester M. Jones, Jones, Key, Melvin & Patton, Franklin, NC, for Plaintiff.

Gregory E. Mierzwinski, Morgan, Padgett & Mierzwinski, Tampa, FL, for Defendant.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment. In accordance with 28, United States Code, Section 636(c), the parties have entered written consents to disposition of this matter by the undersigned.

### I. Jurisdiction

Defendant removed this matter to this court on December 9, 1998, based upon an allegation of an amount in controversy exceeding $75,000[1] and complete diversity. Plaintiff is a corporate resident of the State of North Carolina, defendant resides in the State of Florida, and the amount in controversy is $95,374.90, which well exceeds the jurisdictional minimum. It appearing that there is complete diversity and that the amount in controversy exceeds $75,000, this court has jurisdiction over the subject matter of this action. 28 U.S.C. § 1332(a).

### II. Procedural Background

Plaintiff's motion, filed November 1, 1999, is supported by a memorandum of law and extensive exhibits. Defendant also filed a motion on November 1, 1999, in which he sought to amend his answer to assert the further affirmative defense of accord and satisfaction. Anticipating that such amendment would be allowed, plaintiff briefed the issue of accord and satisfaction in its memorandum filed in support of its Motion for Summary Judgment. Defendant's deadline for filing a response to plaintiff's motion was November 18, 1999, and despite the passage of 90 days, no response in opposition has been filed. *See* Local Rule 7.1(B), W.D.N.C.

### III. Discussion

#### A. Introduction

Despite the procedural default, the court has closely reviewed defendant's amended answer for any possible response contained therein. Although defendant asserts estoppel and the doctrine of accord and satisfaction as affirmative defenses, the amended answer is not verified and cannot be considered as "evidence" that would satisfy his burden under Rule 56, Federal Rules of Civil Procedure, discussed below. The court, however, will consider all admissible evidence in a light most favorable to defendant, including his deposition testimony, which was submitted by plaintiff in support of its motion.

#### B. Standard

■ On a motion for summary judgment, the moving party has the burden of production to show that there are no genu-

---

1. Defendant mistakenly alleged that the amount in controversy exceeded $50,000, which is a reference to the prior jurisdictional minimum.

ine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party [sic], there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of plaintiff's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

## C. Defendant's Affirmative Defenses

### 1. Introduction

██ Review of substantive case law reveals that a defendant cannot rest upon mere allegations in an answer, but has an affirmative obligation to establish his affirmative defenses with affirmative proof. *Aldridge Motors v. Alexander*, 217 N.C. 750, 9 S.E.2d 469 (1940). His burden in responding to plaintiff's motion is to satisfactorily show that estoppel and/or accord and satisfaction would stand in bar to plaintiff's claim. Defendant has not made such a showing, and plaintiff is entitled to the relief it seeks.

### 2. Nature of the Dispute

In substance, plaintiff seeks to recover certain subsidies it provided to defendant under the Hospital and Physician Agreement. Plaintiff has made a *prima facie* showing that it had a contract with the defendant, it made certain payments, and defendant breached the agreement by moving his practice to Florida. For damages, plaintiff seeks repayment of the subsidies in accordance with the terms of the written agreement. The terms of that agreement are not in dispute, and review of all the evidence submitted indicates that defendant breached the agreement.

In pertinent part, the agreement provided that the plaintiff hospital would pay defendant doctor a stipend or subsidy dur-

ing the start-up period of defendant's cardiology practice in the community served by plaintiff hospital. Those supplemental payments were in the nature of advances that were repayable if defendant failed to practice in the community for three years. Upon completion of the three-year term, such indebtedness would be forgiven.

## 3. Estoppel

In support of his allegation that plaintiff should be estopped from asserting any breach, defendant contends that when other doctors committed to building and leasing a large office building on plaintiff's medical campus, they demanded that defendant join them in that venture as a tenant and conditioned future referrals on his willingness to do so. Defendant states that he found such terms to be undesirable and met with some of the doctors and plaintiff's Chief Executive Officer in an attempt to resolve the issue. It is defendant's contention that plaintiff acquiesced to the demands of the other doctors and used its leverage under the agreement to force defendant to become a tenant. For such alleged coercion, defendant maintains that plaintiff should be estopped from asserting the breach.

■ To invoke the doctrine of equitable estoppel under North Carolina law, the party seeking the equitable relief must prove the following elements:

(1) The conduct to be estopped must amount to false representation or concealment of material fact or at least which is reasonably calculated to convey the impression that the facts are other than and inconsistent with those which the party afterwards attempted to assert;

(2) Intention or expectation on the party being estopped that such conduct shall be acted upon by the other party or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon[;]

(3) Knowledge, actual or constructive, of the real facts by the party being estopped;

(4) Lack of knowledge of the truth as to the facts in question by the party claiming estoppel;

(5) Reliance on the part of the party claiming estoppel upon the conduct of the party being sought to be estopped;

(6) Action based thereon of such a character as to change his position prejudicially.

*State Farm Mut. Auto. Ins. Co. v. Atlantic Indemnity Co.*, 122 N.C.App. 67, 75, 468 S.E.2d 570 (1996) (citations omitted). Equitable estoppel is not available to a party who "was put on inquiry as to the truth and had available the means for ascertaining it." *Hawkins v. M & J Finance Corp.*, 238 N.C. 174, 179, 77 S.E.2d 669 (1953).

■ Defendant cannot establish a defense of estoppel in this matter. The only material allegations are that defendant had an agreement with plaintiff to practice in the community for a number of years, other private doctors had an agreement with plaintiff concerning a lease to which defendant was not privy, those doctors allegedly wanted defendant to participate in their lease with plaintiff in exchange for future referrals, plaintiff would not pressure those doctors to relent, and defendant left town with his obligation of repayment allegedly forgiven. Nowhere is it alleged in the first affirmative defense or shown in the record that plaintiff made a false representation or concealed a material fact-essentials when asserting estoppel. In the world of business, in which the medical profession appears deeply immersed, there is no obligation that one business level the playing field or, for that matter, forego an

advantage. Estoppel has no application to this situation.

### 4. Accord and Satisfaction

It is defendant's contention in his amended answer, as well as in his deposition, that plaintiff's Chief Executive Officer told him that if he did not want to join the other doctors as a tenant, he could leave town prior to the expiration of the three-year period and his repayment obligation would be forgiven. Further, defendant asserts that the agreed-to consideration for such $95,374.90 forgiveness was his forbearance in not telling members of the community his real reason for leaving. If this alleged agreement had been reduced to a writing, this matter would proceed to trial.

■■■ Having read the pleadings in a light most favorable to plaintiff, the court has reviewed North Carolina law to determine whether defendant's statements concerning the alleged agreement with plaintiff's Chief Executive Officer are admissible to prove the existence of accord and satisfaction.

Although the existence of accord and satisfaction is generally a question of fact, "where the only reasonable inference is existence or non-existence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record."

*Zanone v. RJR Nabisco*, 120 N.C.App. 768, 771, 463 S.E.2d 584 (1995) (citation omitted).

[In North Carolina, an] "accord" is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considered himself entitled to; and a

"satisfaction" is the execution or performance, of such agreement.

*Sharpe v. Nationwide Mut. Fire Ins. Co.*, 62 N.C.App. 564, 565, 302 S.E.2d 893, *cert. denied*, 309 N.C. 823, 310 S.E.2d 353 (1983)(*quoting Allgood v. Wilmington Savings & Trust Co.*, 242 N.C. 506, 515, 88 S.E.2d 825 (1955)). North Carolina courts have held, as follows:

Establishing an accord and satisfaction ... as a matter of law requires evidence that permits no reasonable inference to the contrary and that shows the "unequivocal" intent of one party to make and the other party to accept a lesser payment in satisfaction ... of a larger claim.

*Moore v. Frazier*, 63 N.C.App. 476, 478–479, 305 S.E.2d 562 (1983). Defendant has properly alleged accord and satisfaction; however, this burden under Rule 56 is an affirmative one, to come forward with competent evidence upon which a finder of fact could find in his favor on the affirmative defense.

While the hearsay testimony of defendant would be admissible as declarations of a party opponent, they appear to be barred by the parol-evidence rule. Section 4.06 of the undisputed contract provides that such writing is the entire agreement between the parties and that it "may not be changed orally...." Defendant's testimony concerning the alleged oral promise by plaintiff's Chief Executive Officer as to forbearance would contradict the terms of the written agreement by altering the repayment provision and contradicting the no-oral-modification clause.

■■■ North Carolina's parol-evidence rule provides that when a contract is reduced to writing, parol evidence cannot be admitted to vary, add to, or contradict the same. *Hoots v. Calaway*, 282 N.C. 477, 486, 193 S.E.2d 709, 715 (1973). In this

case, defendant has attempted to introduce oral evidence that contradicts both the repayment provision and the no-oral-modification provision of the written contract. Plaintiff has properly raised the parol-evidence rule in bar. No other evidence of an accord and satisfaction appearing, the court finds that defendant cannot submit evidence that would satisfy his burden of proof on this issue.

### 5. Breach of Contract and Damages

■ Having found that defendant has not made a showing that would satisfy his burden under Rule 56 as to either estoppel or accord and satisfaction, the court must now consider whether any issue remains as to plaintiff's breach-of-contract claim. Plaintiff has tendered the contract, presented uncontradicted evidence of its breach, and shown that it is entitled to damages in a sum certain in accordance with the terms of the agreement. Finding that no genuine issues of material fact remain for trial, the court will grant plaintiff's Motion for Summary Judgment and enter judgment in favor of plaintiff. A judgment reflecting such decision is entered simultaneously herewith.

This Memorandum of Decision is entered in response to plaintiff's Motion for Summary Judgment (# 9).

### MEMORANDUM AND ORDER

**THIS MATTER** is before the court upon defendant's Motion for Re–Hearing. Plaintiff's Motion for Summary Judgment, filed November 1, 1999, was supported by a memorandum of law and extensive exhibits. Defendant's deadline for filing a response to plaintiff's motion was November 18, 1999, and despite the passage of 90 days, no response in opposition was ever filed. *See* Local Rule 7.1(B), W.D.N.C. In moving for "re-hearing," defendant has failed to show excusable neglect, Fed. R.Civ.P. 6(b)(2), for his failure to comply with either Local Rule 7.1(B) or the requirements of Rule 56(e), which provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Finally, review of the court's docket reveals that counsel for defendant is not a member of the North Carolina Bar or the Bar of this court and failed to seek special admission at any time after he removed the matter to this court. Counsel for defendant shall take action immediately to correct his unauthorized practice of law before this court.

Beyond such procedural issues, defendant has argued that this court "misapprehended the application of the North Carolina parole [*sic*] evidence rule as it pertains to the defense of accord and satisfaction." It is defendant's contention in his amended answer, as well as in his deposition, that plaintiff's Chief Executive Officer told him that if he did not want to join the other doctors as a tenant, he could leave town prior to the expiration of the three-year period and his repayment obligation would be forgiven. Further, defendant asserts that the agreed-to consideration for such $95,374.90 forgiveness was (a) his forbearance in not telling members of the community his real reason for leaving or (b) his past performance.

Section 4.06 of the undisputed contract provides that such writing is the entire agreement between the parties and that it

"may not be changed orally...." Defendant's testimony concerning the alleged oral promise by plaintiff's Chief Executive Officer, Mike Zuliani, as to forbearance would contradict the terms of the written agreement by altering the repayment provision and the no-oral-modification clause.

North Carolina's parol-evidence rule provides that when a contract is reduced to writing, parol evidence cannot be admitted to vary, add to, or contradict it. *Hoots v. Calaway*, 282 N.C. 477, 486, 193 S.E.2d 709, 715 (1973). In the Motion for Re-Hearing, defendant argues for the first time that North Carolina law would not exclude *subsequent* oral agreements, even where the written agreement has a no-oral-modification clause.

North Carolina law is limited on the precise issue of whether an *integrated* contract containing a no-oral-modification provision may be modified by subsequent oral agreement. The Court of Appeals for the Fourth Circuit has not ruled on this exact issue, but has ruled on a similar issue, as follows:

Under North Carolina law, the parol evidence rule prohibits the admission of parol evidence to vary, add to, modify, or contradict a written instrument intended to be the final integration of a transaction.

\*   \*   \*   \*   \*   \*

The [district] court was willing to accept reliable evidence of modifications or agreements allegedly made after the document's execution.

*Vernon Carlton Sales, Inc. v. SSMC, Inc.*, 53 F.3d 330 (Table), 1995 WL 263496, at \*3 (4th Cir.1995)(*citing Muther–Ballenger v. Griffin Elec. Consultants*, 100 N.C.App. 505, 397 S.E.2d 247, 250 (1990) (parol-evidence rule does not bar evidence of oral modifications made subsequent to the written contract)). *Muther–Ballenger* does not address the precise issue of whether parol evidence is admissible where the written contract contains a no-oral-modification provision.

The issue becomes whether North Carolina law would allow parol evidence of a subsequent agreement where the earlier agreement contained a clear no-oral-modifications provision. Absent an unambiguous North Carolina decision, the court has turned to general contract principles, which this court believes a North Carolina court would follow. Other states have found that a "fully integrated written contract," *i.e.*, one containing a clause stating that subsequent modifications must be in writing, may be modified by a subsequent oral agreement. *Cambridgeport Sav. Bank v. Boersner*, 413 Mass. 432, 597 N.E.2d 1017, 1022 (Mass.1992). In perhaps the most colorful illumination of this contract principle, the Pennsylvania Supreme Court held in *Wagner v. Graziano Const. Co.*, 390 Pa. 445, 136 A.2d 82, 83 (Pa.1957), as follows:

The most ironclad written contract can always be cut into by the acetylene torch of parol modification supported by adequate proof.... The hand that pens a writing may not gag the mouths of the assenting parties.

It would appear that North Carolina would follow the standard contract principle that even a fully integrated written contract can be modified by a subsequent oral agreement.

Finding that parol evidence could be considered, *Vernon Carlton Sales, Inc.*, makes clear that it would be the proponent of the oral agreement's burden to show its existence by clear and convincing evidence. On summary judgment, it would be the proponent's burden to come forward with colorable evidence upon which a reasonable fact finder could hold in his favor. Inasmuch as consideration will not be in-

ferred, as it is under contracts controlled by the North Carolina Uniform Commercial Code, defendant's burden is to present evidence that the oral modification is supported by good and valuable consideration.

Defendant may contend that the consideration for this alleged agreement is his past performance under the contract. Defendant testified that Mike Zuliani told him that the debt would be forgiven because "you have earned enough to pay us back ten times over. That will be forgiven." Alternatively, defendant may be contending that it was his forbearance in not telling others in the Franklin community his real reason for leaving, but, instead, agreeing to fabricate a reason for returning to Florida.

For a contract to be enforceable in North Carolina, it must be supported by consideration. *Investment Properties v. Norburn,* 281 N.C. 191, 195, 188 S.E.2d 342 (1972). Consideration is some benefit or advantage to the promisor *or* some loss or detriment to the promisee. *Helicopter Corp. v. Realty Co.,* 263 N.C. 139, 147, 139 S.E.2d 362 (1964). Mutual promises may constitute reciprocal consideration to support a contract. *Penley v. Penley,* 314 N.C. 1, 16, 332 S.E.2d 51 (1985); *Allied Personnel v. Alford,* 25 N.C.App. 27, 30, 212 S.E.2d 46 (1975).

> [T]here is consideration if the promisee, in return for the promise, does anything *legal* which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.

17 C.J.S. 426 (*quoted* with approval in *Penley, supra,* at 14, 332 S.E.2d 51).

In this case, "past performance" under the original contract does not constitute valid consideration under North Carolina law, as that would be a gratuitous promise. *Bailey v. Rutjes,* 86 N.C. 517 (1882) (a promise by lessors to pay for lumber furnished the lessee, if made after the lumber was furnished, is not binding on them, it being purely gratuitous).

The only issue left is whether defendant's forbearance in telling the medical community the true reason he was leaving is adequate consideration. In *Bumgarner v. Tomblin,* 63 N.C.App. 636, 306 S.E.2d 178 (1983), the North Carolina Court of Appeals held that a promisee's doing something he is not bound to do or refraining from exercising a right, suffices as consideration for a promise. Defendant testified that the promise to forbear was made in proximity to the alleged oral agreement, which suffices under North Carolina law. *See Carolina Eastern, Inc. v. Benson Agri Supply, Inc.,* 66 N.C.App. 180, 310 S.E.2d 393 (1984). For forbearance to constitute legal consideration, it must be based upon a promise to forbear made at the time of the parties' contract. *Id.*

While such forbearance would be consideration, the next issue is whether it would be lawful consideration. Plaintiff argues that an agreement to fabricate a story to hide defendant's real reason for leaving would be unenforceable as against public policy. In *Lamm v. Crumpler,* 233 N.C. 717, 65 S.E.2d 336 (1951), the North Carolina Supreme Court held, as follows:

> Moreover, it is an established principle, universally applied in this jurisdiction to various factual situations, that an executory contract, the consideration of which is against good morals, or against public policy, or the laws of the State, or in fraud of the State, or of any third person, cannot be enforced in a court of justice.

> For instance, in *Blythe v. Lovinggood,* supra, it is held: "The law prohibits everything which is *contra bonos mores,* and, therefore, no contract which originates in an act contrary to the true principles of morality can be made the

subject of complaint in the courts of justice."

*Id.*, at 722, 65 S.E.2d 336 (citations omitted). While the court is cognizant of the fact that employers and employees agree all the time to fabricate reasons for a person's departure, they do not typically come to a court to seek enforcement of those agreements. Indeed, the court can find no specific North Carolina cases dealing with that particular point. North Carolina does, however, adhere to a rigid standard of "true principles of morality" when a person applies to a court to enforce a contract. Truth is certainly a principle of morality. North Carolina law appears to make no exception for small untruths as opposed to big untruths, and even though this would be the most routine deception, North Carolina courts would be compelled to avoid lending credence to any such agreement. This court, therefore, must also stay its hand and reaffirm its granting of the Motion for Summary Judgment for the reasons discussed herein and the reasons contained in the earlier filed Memorandum of Decision, as modified hereby.

Having found that defendant has not made a showing that would satisfy his burden under Rule 56 as to either estoppel or accord and satisfaction, and finding that no genuine issues of material fact remain for trial, the court hereby grants defendant's Motion for Re–Hearing (deemed to be a Motion to Reconsider). Further, the court, having conducted such reconsideration, reaffirms the earlier Memorandum of Decision, as modified by this Memorandum and Order, and reaffirms the earlier entry of judgment in favor of plaintiff.

This Memorandum and Order is entered in response to defendant's Motion for Re–Hearing (# __).